UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAM NABOYCHIK,                                         No. 10-10521

            Plaintiff,                              District Judge Victoria A. Roberts
v.                                                      Magistrate Judge R. Steven Whalen

SALIX PHARMACEUTICALS, INC.,

            Defendant.
_____/

## REPORT AND RECOMMENDATION

Before the Court is Defendant's Amended Motion for Summary Judgment [Doc. #33],[1] which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Ms. Naboychik's complaint was originally filed in the Oakland County Circuit Court, and removed to this Court on February 5, 2010. She alleged the following claims against Defendant Salix Pharmaceuticals, Inc. ("Salix"): Count I: violation of the Elliot-Larsen Civil Rights Act ("ELCRA"), M.C.L. § 37.2101, *et seq.*; Count II: violation of the Age Discrimination in Employment Act ["ADEA"], 29 U.S.C. § 621, *et seq.*; and Count III: violation of Title VII of the Civil Rights Act of 1962, 42 U.S.C. 2000e, *et seq.*

On July 20, 2010, Defendant filed a motion for partial summary judgment [Doc. #17] seeking dismissal of the Title VII and ADEA claims for failure to exhaust administrative remedies, and dismissal of ELCRA claims related to events occurring in 2005 based on the statute of limitations. The Defendant states in its Reply Brief [Doc. #39, p.1] that Plaintiff orally agreed to withdraw those claims, but never signed a proposed stipulation. However, in her Response to the Amended Motion for Summary Judgment [Doc. #36, p.8], Ms. Naboychik now concedes that "[t]he lone cause of

---

[1] The amended motion for summary judgment was filed in redacted form, with redacted exhibits, under Doc. #33. The unredacted motion and exhibits were filed under seal in Doc. #35, in compliance with the Court's stipulated order permitting certain exhibits to be filed under seal. *See* Doc. #32.

action that remains is the state law Elliott Larsen Civil Rights claims of age and gender discrimination" involving the 2008 and 2009 incidents, and confines her arguments to those claims.[2]

Salix is a specialty pharmaceutical company that markets gastrointestinal-related products to doctors, hospitals and managed care providers. *Defendant's Exhibit A, Affidavit of Scott Plesha*, ¶ 3. Ms. Naboychik began work for Salix in August of 2003, as a Territory Manager ("TM"). *Id.* ¶ 7. TM's are Salix's primary sales force. *Id.* ¶ 5. Ms. Naboychik was 41 years old when she began work for Salix. *Defendant's Exhibit B, Naboychik Deposition*, p.58. Effective January 1, 2006, she was promoted to Senior Territory Manager, and given a raise. *Plesha Affidavit*, ¶ 8. At that time, she reported to Regional Sales Manager ("RSM") Susan Pyle. *Id.* ¶ 7.

### The 2008 Regional Sales Manager Position

The parties agree that Ms. Pyle left Salix in May of 2008, and that Area Sales Director Brendan Walsh, to whom Ms. Pyle reported, sought to replace her as a Regional Sales Manager. Ms. Naboychik asked Mr. Walsh if she could apply for the RSM position, but he declined. Mr. Walsh testified that he recommended that Ms. Naboychik not pursue an interview for two reasons. First, he was hesitant to promote someone within a region to a supervisory position, where it would be "difficult to effectively lead a group of individuals with whom you had been a peer for a period of time." *Defendant's Exhibit D, Walsh Deposition*, p.13. He likewise did not allow two other TM's–Chris Wild and Eric Howell, both males–to apply for Ms. Pyle's position, for the same reason. *Id*., 13, 20. Secondly, Ms. Naboychik had not been through a "PCI"[3] evaluation, which is a course to evaluate leadership, decision-making and other skills required of the RSM position. *Id*., 13-14. Instead, Mr. Walsh interviewed two other candidates who were not within his regions–Ray Perry from Atlanta and Carlo Marchionni from Indianapolis. *Id.* 17-21. Mr. Marchionni had not at that time been through PCI, but Mr. Walsh knew that he was scheduled to do so, and that he would

---

[2] A text-only entry on the docket indicates that the original motion for partial summary judgment [Doc. #17] was terminated on January 4, 2011.

[3] "PCI" stands for Psychological Consultants, Inc., the private company contracted to perform the evaluations.

have the results of the evaluation by the time he was ready to make a decision. *Id*. 18. Unlike Mr. Marchionni, Ms. Naboychik did not tell Mr. Walsh of her desire to go through PCI. *Id*. 19. Ultimately, Mr. Walsh hired Mr. Perry for the position, based on hisسales results, overall leadership (he had served as a Captain in the U.S. Marine Corps., with leadership, training and executive responsibilities)[4], responses to interview questions, overall performance at the company, and, less importantly, his PCI score. *Id*. 21-22. Ms. Naboychik reported to Mr. Perry after he became the RSM. *Id.* 22.

In support of her claim that Mr. Walsh's decision to not allow her to compete for the 2008 RSM position was the result of age and gender discrimination, Ms. Naboychik testified to a conversation she and Mr. Walsh had during an automobile ride. She recounted the conversation as follows:

> "Well, I can tell you that when I did a ride-along with Brendan on a particular work contact, I was in the car and we were talking about compliance, and that's another term that you hear a lot in the pharmaceutical industry, and what I'm referring to is compliance about patients being able to take their medication on a consistent basis so that they can remain healthy. We were on that topic, and he looked at me and he said in a kind of an inflammatory way, Well, you know that if it's going to be a 40-or-some-odd-year woman, she's sure as heck going to take her medication, she'll be very anal about not not doing, it, and I was shocked, and I looked at him like, how can you say that when I'm in my forties and a woman, and then he wen Uh, uh, and I changed the subject immediately." *Defendant's Exhibit B, Naboychik Deposition*, 119-20.

Ms. Naboychik testified that she was concerned with the manner in which Mr. Walsh made the statement. The discussion involved Apriso, a medication for ulcerative colitis. Her testimony continued:

> Q.  So what Mr. Walsh was saying to you is that women who are over 40 with a painful condition are more likely to keep taking the medicine to avoid the incident occurring?
>
> A.  It wasn't that–in that statement it sounds really positive, doesn't it? But the way in which he said it, Oh, my God, you know, they're anal.  It was negative. It was inflammatory. It was not said like he really respected women. That's how it was said. *Id.* 128-29.

---

[4] *Defendant's Exhibit A-2*, Résumé of Ray Perry. (Filed under seal).

Ms. Naboychik acknowledged that Mr. Walsh never made any direct comment to her about her age or gender adversely affecting her employment. *Id*. 131.

When asked at her deposition about any other comments Mr. Walsh might have made, or any other instances of gender discrimination, Mr. Naboychik related hearsay statements that were relayed to her by another employee, allegedly involving that employee's concern about being placed on a PIP (performance improvement plan) (although that employee was not placed on a PIP), and some other employees that allegedly said were discriminated against because they were pregnant. *Id*. 129.[5]

When asked if there were any high-ranking women in sales, Ms. Naboychik testified that the CEO of Salix is a woman, over the age of 40, who she thought "started off from the bottom and worked her way up." *Id*. 130-31.

## The 2009 National Account Manager Position

In the Autumn of 2009 Salix posted two openings for National Account Manager ("NAM") positions, one in California and a central position which covered Michigan, Ohio, Indiana and Kentucky. Ms. Naboychik applied for only the latter position, as she did not wish to relocate to California. *Naboychik Deposition*, 139-40. She said that two individuals interviewed for the California NAM position, a man and a woman, and the woman was selected.[6] The man was offered

---

[5] Under Fed.R.Civ.P. 56(c)(1)(A) and (c)(2), facts must be supported by admissible evidence. These statements of the other employee are inadmissible hearsay, and may not be considered in deciding the summary judgment motion.

[6] Ms. Naboychik made a point of emphasizing the successful candidate's age:

Q. ...and who got the California position?

A. Tessa Atkins.

Q. Is Tessa Atkins a woman?

A. Yes, she is, a very young woman.

Q. Well, still a woman?

A. Uh-huh, a very young woman. *Id*. 141.

However, Ms. Naboychik conceded that Ms. Atkins' score on "an untimed test of

the central position, but like Ms. Naboychik, did not want to relocate. *Id.* 141. The central NAM position that is the basis of Ms. Naboychik's claim of age and gender discrimination was ultimately filled in the Summer of 2010 by an external female candidate over the age of 40, who held a doctorate in pharmacy. *Defendant's Exhibit C, Affidavit of John Temprano*, ¶¶ 27-29.

By this time, Ms. Naboychik had completed the PCI evaluation. She testified that before her interview for the NAM position, Ray Perry, who supported her for the promotion, contacted John Temperato, who was on the decision-making team. Mr. Perry procured material for her to prepare for the interview, such as prior interview questions and notes, and databases/spreadsheets that she would be required to analyze both at the interview and in the position of NAM. *Naboychik Deposition*, 146-49. In addition, Mr. Perry and Mr. Walsh also arranged to postpone her interview to that she would have more time to prepare. *Walsh Deposition*, 28.

Ms. Naboychik testified to her belief that she failed to get the NAM position because Mr. Walsh did not support her:

> "At all cost I was not going to be given a position at Salix. It became very clear, and it became very clear when I read the file because it says no internal support, which is what I've been saying all along. Brendan Walsh did not support me." *Naboychik Deposition*, 146.

She further testified:

> "I think [Mr. Temperato] was making the decision not to go forward with me based on the fact that Brendan [Walsh] did not want me in the position because I'm an older female." *Id.* 176.

Brendan Walsh testified that when Mr. Perry told him that Ms. Naboychik was interested in the NAM position, he was supportive of her competing for it. *Walsh Deposition*, 23. Although he had conversations with Mr. Perry, he never talked to Mr. Temperato about Ms. Naboychik's candidacy. Rather, he said, Mr. Perry was her contact with Mr. Temperato. *Id*. 24-25. He said that Mr. Perry "had a conversation with John Temperato, and then he worked with Pam on her preparation for the interview. And then it was, you know, up to Pam." *Id*. 25. He testified that he did not call Mr. Temperato himself because Ms. Naboychik did not ask for his support:

---

complex problem-solving and analytical reasoning" was at the 97th percentile, much higher than her own score. *Id*. 143.

-5-

> Q. Did you call anyone other than Mr. Temperato [sic Perry] to express your desire to have Pam Naboychic become a NAM?
>
> A: No, I did not.
>
> Q. And why not?
>
> A. Well, I've had many people that have gone for promotions in my area, and in all those cases my support for them is based on a lot of different things.
>
> Primarily, I'm looking for an individual, particularly one who is moving into a leadership position to take control of their career and reach out to me and express their interest, demonstrate their capabilities and ask for my support.
>
> I did not hear any of that from Pam during that NAM process. *Id*. 25-26.

Mr. Walsh said that in general, he did not communicate with Mr. Temperato about NAM candidates, although in a "couple of cases," candidates approached him for his input because he had been a NAM in the past. *Id*. 29.

Mr. Walsh testified that in addition to strong communication skills, an important "skill set" for the NAM position is the "strategic analysis and the ability to take a lot of raw data and boil that data down to identify business opportunities that exist within a certain account." *Id.* 45. He said that Mr. Perry provided Ms. Naboychik with an array of such data to prepare her for the interview, but that she had some difficulty in manipulating and distilling the data in a way that would be helpful. *Id*. 45-46.

John Temperato testified that the two individuals that applied for the California NAM position were very highly qualified, but Tessa Atkins was more qualified. *Temperato Deposition*, 21. He said that both were "perfect examples of sales reps who had extensive other folks within the organization come and advocate of their behalf." Specifically, both were supported by other NAMs. *Id.* 21-22. However, he said, Ms. Naboychik did not receive support from other NAMs. Instead, he heard negative feedback from two NAMs:

> Q. Did you ever get any negative input from any of these NAM's?
>
> A. Yes.
>
> Q. About Ms. Naboychik?
>
> A. Yes.

Q. What kind of negative input?

A. That it didn't seek like she did all of her homework and wanted to rely on them.

Q. What do you mean by that?

A. In terms of utilizing–instead of just asking the NAM's for feedback, she wanted the NAM's to do some of her project or some portion of her project, I guess.

Q. Who specifically–what NAM specifically said that?

A. I think it was Mike.

Q. Anybody else? Any other NAM's that gave negative feedback about Ms. Naboychik?

A. Pete Currie.

Q. What did Mr. Currie say?

A. Well, Pete was the National Account Manager responsible for the geography with which Pam was a sales rep and basically said that she was one of the more disruptive sales repas in terms of two-way communication. *Id.* 23-24

\*                                         \*                                         \*

Q. Did Mr. Currie indicate to you why he felt that Ms. Naboychik was one of the more disruptive sales representatives?

A. You know, maybe disruptive was too harsh a word. There are people you enjoy working with on a daily basis, and there are people that you don't enjoy working with. She fell into the latter category. *Id.* 32.

Mr. Temperato indicated that the lack of advocacy from other NAMs played heavily into his decision not to hire Ms. Naboychik, but that he did not expect support from either Mr. Walsh or Mr. Perry. *Id.* 17, 25-26, 27-28.

Mr. Temperato stated as follows concerning Ms. Naboychik's performance at the interview:

"Other than the lack of advocacy and then whatever I wrote down of the forms, I would find those two things.

The biggest disconcerting thing was the lack of advocacy and my thinking that she would have interpersonal communication issues with the rest of the group.

And then number two, the not answering or trying to bluff her way through a question, which is one of my little pet peeves.

If you don't know, it's OK to say you don't know. Just tell me how you're going to find out." *Id.* 28-29.

Mr. Temperato also said that the ability to filter through and interpret large amounts of data was an important aspect of the NAM position, and that it would be "extremely disconcerting" to him if a candidate lacked that skill. *Id.* 35-36.

Ms. Naboychik resigned from Salix effective February 1, 1010. *Naboychik Deposition*, 37-38. She accepted a position with another pharmaceutical company on February 12, 2010. *Id.* 7.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).  Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate.  *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

## III.  ANALYSIS

An employment discrimination case under ELCRA is analyzed under the same framework as an analogous claim under Title VII.  *Sutherland v. Michigan Dept. of Treasury,* 344 F.3d 603, 614 (6th Cir. 2003); *Cox v. Electronic Data Systems Corp.*, 751 F.Supp. 680, 690 (E.D. Mich. 1990); *Nixon v. Celotex Corp.*, 693 F.Supp. 547, 553-54 (W.D. Mich. 1988).

Ms. Naboychik has not presented any direct evidence of discriminatory intent as to either the 2008 or 2009 position. Direct evidence is "evidence that proves the existence of a fact without requiring any inferences." *Blair v. Henry Filters, Inc.,* 505 F.3d 517, 523 (6th Cir.2007) (quoting *Rowan v. Lockheed Martin Energy Sys., Inc.,* 360 F.3d 544, 548 (6th Cir.2004)). Ms. Naboychik claims that Mr. Walsh's comments, during an automobile ride, about women over the age of 40 being "anal" with regard to taking medication constitutes direct evidence. It does not. The comment was not made in the context of an employment decision, and was ambiguous at best. Stray remarks unrelated to the decisional process do not constitute direct evidence of discrimination. "Evidence of discriminatory motives must ... have some relationship with the employment decision in question; inappropriate but isolated comments that amount to no more than 'stray remarks' in the workplace will not do." *Preston v. Berendsen Fluid Power*, 125 F.Supp.2d 245, 250 -251 (W.D.Mich. 2000) (quoting *Venters v. City of Delphi,* 123 F.3d 956, 973 (7th Cir.1997)). *See also Wohler v. Toledo Stamping & Mfg. Co.,* 125 F.3d 856, 1997 WL 603422, at *3 (6th Cir. Sept.30, 1997) (table) (distinguishing a "comment made as part of a conversation specifically addressing the decisional process" from "stray remarks unrelated to the decisional process"). Ms. Naboychik conceded that Mr. Walsh did not make any direct employment-related comments to her. *Naboychik Deposition*, 131.

Therefore, Ms. Naboychik's claims are based on circumstantial evidence. In such case, the burden-shifting approach first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 37 L.Ed.2d 668 (1973), applies. *See Johnson v. Kroger Co.*, 319 F.3d 858, 865-66 (6th Cir. 2003). Under that framework, a plaintiff must present a prima facie case of unlawful discrimination. Once she or he has done so, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for taking the challenged action. *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000).[7] If the defendant satisfies that burden, the plaintiff must then prove, by a preponderance of the evidence, that the proffered reason for the defendant's actions is not the true reason, but rather a pretext for discrimination.

---

[7]This is a burden of production. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6th Cir. 2001).

-9-

### A.  Prima Facie Case

In order to establish a prima facie showing of racial discrimination, Ms. Naboychik must introduce sufficient evidence that (1) she was a member of the protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) the adverse action was taken under circumstances giving rise to an inference of unlawful discrimination. *McDonnell Douglas, supra,* 411 U.S. at 802; *Hazle v. Ford Motor Co.*, 464 Mich. 456, 463, 628 N.W.2d 515 (2001). The last factor is generally shown by evidence that the plaintiff was "treated differently from similarly situated individuals outside of [the] protected class." *Smith v. City of Salem, Ohio,* 378 F.3d 566, 570 (6th Cir. 2004)(*citing Perry v. McGinnis,* 209 F.3d 597, 601 (6th Cir.2000)); *McDonnell Douglas,* 411 U.S. at 802, 1824. In comparing treatment with "similarly situated" individuals, a plaintiff "must show that the 'comparables' are similarly situated in all respects." *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992), that is, that the comparables must be "nearly identical" in all relevant aspects. *Town v. Michigan Bell Telephone Co.*, 455 Mich. 688, 700, 568 N.W.2d 64 (1997).

Viewing the evidence in the light most favorable to Ms. Naboychik, she has satisfied the first three elements of a prima facie case. The fourth element–that her employer failed to promote her under circumstances giving rise to an inference of discrimination–is more problematic.

As to the 2008 position of RSM, it is true that the job went to Ray Perry, a younger male. However, unlike Ms. Naboychik, Mr. Perry had not worked in the same geographical area under the supervision of Susan Pyle. In fact, Mr. Walsh declined to allow two younger males apply for the RSM position, for the same reason. Moreover, Mr. Perry had completed the PCI evaluation, whereas Ms. Naboychik had not even expressed an intention to do so. She and Mr. Perry are not "similarly situated in all respects," and she has not made out a prima facie case as to the 2008 position.

Although there is likewise little evidence that Ms. Naboychik was treated differently from similarly situated individuals in applying for the 2009 NAM position, this presents a somewhat closer question. The California position, for which she did not apply, went to a female candidate, albeit one that was younger than Ms. Naboychik, a fact that could conceivably support a prima facie

-10-

case as to age discrimination. The central NAM position was originally offered to a younger male, and while this fact, standing alone, might support an inference of differential treatment, the position was ultimately filled by a candidate in the same demographic class as Ms. Naboychik–a female over the age of 40.

The Defendant argues primarily that the candidates that were offered NAM positions–two females and one male– are not comparables based on their superior qualifications, including their support from other NAMs. This factor, however, is more appropriately addressed in the context of whether Salix had a non-discriminatory basis to deny Ms. Naboychik the position, or whether the stated reason was pretextual. Again, although it is a close question, I will generously assume that she has made out a prima facie case as to the 2009 position.

### B.    Non-discriminatory Basis for Salix's Decisions

Here, I will assume, for the sake of argument, that Ms. Naboychik has established a prima facie case as to both the 2008 RSM position and the 2009 NAM position. Even so, Salix has proffered strong evidence that the decision not to promote her was in both cases based on non-discriminatory factors.

As to the 2008 RSM position, it was of critical importance to Mr. Walsh that the candidate who was to replace Susan Pyle had not worked as a peer to the TM's he or she would be supervising. That this justification was not based on discriminatory intent is shown by the fact that two younger males who, like Ms. Naboychik, had worked with the same people and reported to Ms. Pyle, were denied the opportunity to apply for the RSM job, and the position ultimately went to Mr. Perry, who came from Atlanta. Thus, Ms. Naboychik was treated the same as, not differently from candidates outside the protected class. In addition, not only had Mr. Perry completed the PCI evaluation, but he demonstrated exceptionally strong leadership qualities.

The successful candidates for the 2009 NAM position were chosen over Ms. Naboychik not for discriminatory reasons, but because they had stronger qualifications in the areas that Mr. Temperato deemed critical, especially the strong support of other NAMs. Ms. Naboychik, by contrast, not only had an absence of support among the other NAMs, but one of them who had direct knowledge of her made negative comments about her to Mr. Temperato.

Ms. Naboychik argues that the "lack of support" that cost her the job was the result of Mr. Walsh's failure to actively support her candidacy based on what she claims–with virtually no evidentiary support apart from a stray comment in an automobile–was his bias against women over the age of 40. This argument is a red herring. Mr. Walsh's support was neither sought nor expected by Mr. Temperato, who was the decision maker. Rather, what was important to him was the support of other NAMs, which Ms. Naboychik clearly did not have.

In addition, Ms. Naboychik performed badly in her interview, "faking" her way through questions rather than admitting she did not know the answer. And finally, Salix's lack of discriminatory intent in filling the NAM positions is demonstrated by the fact that the California position went to a woman, and the central position that Ms. Naboychik applied for eventually went to a woman who was over 40.

Salix has met its burden of showing a non-discriminatory basis for its hiring decisions.

### C. Pretext

Under the third prong of *McDonnell Douglas*, the burden now shifts back to the Ms. Nabochik to show that the Defendant's stated reasons are pretextual. She may meet that burden by showing (1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate the decision, or (3) that the proffered reason was not sufficient to motivate the decision. *Smith v. Leggett Wire Co.,* 220 F.3d 752, 759 (6th Cir. 2000) (citing *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994)).

As discussed above, Salix's proffered reason for not promoting Ms. Naboychik is well-grounded in fact, in that the candidates who were selected had superior qualifications in the areas that Mr. Temperato deemed important. Nor has Ms. Naboychik met her burden of showing that the proffered reason was not sufficient to motivate the employment decision.

This leaves the second prong, that the proffered reason was not the actual reason, but merely a pretext for discrimination. Here too, Ms. Naboychik has failed to carry her burden. As to the 2008 RSM position, her sole basis for claiming pretext is a stray, ambiguous remark made by Mr. Walsh, but not in the context of any employment decision. This is hardly sufficient to establish a prima facie case, much less pretext.

In terms of the 2009 NAM position, she hangs her hat on Mr. Walsh's lack of support. Yet apart from the fact that Mr. Walsh and Mr. Perry *were* supportive of her candidacy, even to the extent of postponing and helping her prepare for the interview, Mr. Walsh's support was simply irrelevant to the decision-making process. And to the extent that Mr. Walsh did not *actively* support her by contacting Mr. Temperato, Ms. Naboychik has again failed to show that he was motivated by any gender or age-based animus. Instead, Ms. Boychik's claim of pretext is based on her own conjecture and subjective beliefs. *See Mitchell v. Toledo Hosp.,* 964 F.2d at 585 ( "[C]onclusory allegations and subjective beliefs ... are wholly insufficient evidence to establish a claim of discrimination as a matter of law"); *Carson v. Ford Motor Co.*, 413 Fed.Appx. 820, 824, 2011 WL 379190 *4 (6th Cir. 2011) (plaintiff's burden is not satisfied by introducing "metaphysical doubt" as to the intent of the decision-maker, and his "subjective belief that [the defendant's] proffered reason is false...is not sufficient to withstand summary judgment").

It is understandable that Ms. Naboychik was disappointed in not being promoted to RSM or NAM, and she no doubt views Salix's employment decisions as unfair. But this Court does not "sit as a super-personnel department" to second-guess the wisdom of an employer's hiring decisions. *Hedrick v. Western Reserve Care Sys.,* 355 F.3d 444, 462 (6th Cir.2004) (quoting *Krenik v. County of Le Sueur,* 47 F.3d 953, 960 (8th Cir.1995)). The question is not whether the decisions were unfair or unwise, but whether they were motivated by improper considerations of gender or age. Ms. Naboychik has failed to support any genuine issue of material fact as to her claim of discrimination, and under the facts of this case, no rational trier of fact could find in her favor. *Simmons-Harris v. Zelman, supra*. Therefore, summary judgment should be granted in Defendant's favor.

## IV.   CONCLUSION

For these reasons, I recommend that Defendant Salix's Amended Motion for Summary Judgment [Doc. #33, 35] be GRANTED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a

waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen<br>R. STEVEN WHALEN<br>UNITED STATES MAGISTRATE JUDGE

Date: August 8, 2011

_____

**CERTIFICATE OF SERVICE**

I hereby certify on August 8, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on August 8, 2011: **None.**

s/Michael E. Lang<br>Deputy Clerk to<br>Magistrate Judge R. Steven Whalen<br>(313) 234-5217