UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAM NABOYCHIK,

        Plaintiff,                    CASE NUMBER: 10-10521

                                    HONORABLE VICTORIA A. ROBERTS
v.                               MAGISTRATE JUDGE R. STEVEN
                                    WHALEN

SALIX PHARMACEUTICALS, INC.,

        Defendant.
_____/

**ORDER**

**I.    INTRODUCTION**

This matter is before the Court on Pam Naboychik's (Plaintiff) objections to Magistrate Judge R. Steven Whalen's Report and Recommendation (R&R) (Doc. 50) on Defendant Salix Pharmaceuticals, Inc.'s (Defendant) Amended Motion for Summary Judgment (Doc. 33). Defendant's motion was referred to Magistrate Whalen for an R&R pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the Court **ADOPTS** the R&R in full; Defendant's Amended Motion for Summary Judgment is **GRANTED**.

**II.    BACKGROUND**

    **A. Summary of Facts**

The statement of facts in the R&R is a fair and accurate representation of the record; the Court adopts and incorporates that section into this order (R&R at pp. 1-8).

1

What follows is a brief summary of the most relevant facts.

Plaintiff originally filed suit in Oakland County Circuit Court. The Defendant removed to this Court on February 5, 2010. Plaintiff alleged three causes of action: violation of the Michigan Elliot-Larsen Civil Rights Act (ELCRA), M.C.L. § 37.2101, *et seq.* (Count I); violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.* (Count II); and violation of Title VII of the Civil Rights Act of 1962, 42 U.S.C. 2000e, *et seq.* (Count III). On July 20, 2010, Defendant filed a motion for partial summary judgment arguing that Plaintiff's Title VII and ADEA claims should be dismissed for failure to exhaust administrative remedies, and that Plaintiff's ELCRA claims related to events that occurred in 2005 should be dismissed based on the statute of limitations. Plaintiff never responded to the motion and no order was entered; however, in her Response to the pending Amended Motion for Summary Judgment, Plaintiff concedes that the only claims remaining are the ELCRA claims of age and gender discrimination involving the 2008 and 2009 incidents.

Plaintiff's remaining claims involve two incidents of alleged age and sex discrimination in 2008 and 2009 that allegedly cost her promotions at Salix Pharmaceuticals. Specifically, Plaintiff argues that Area Sales Director Brendan Walsh harbored a hostility towards older women that caused him to prevent her promotion on two separate occasions.

The first incident of alleged discrimination involved an open Regional Sales Manager (RSM) position in 2008. The new RSM would report directly to Mr. Walsh. Plaintiff reportedly asked Mr. Walsh if she could interview for the open RSM position and he declined, for two reasons: (1) he was hesitant to promote someone from within

2

the region because he believed such a person would have a difficult time leading individuals with whom he or she had formerly been a peer; and (2) Plaintiff had not been through a "PCI" evaluation, a course to evaluate leadership and other skills required for the RSM position. *Walsh Depo.*, 13-14. Mr. Walsh instead interviewed two men from outside the region and hired Ray Perry, a former Marine, based on his sales results, overall leadership, responses to interview questions, performance at the company, and PCI score. Notably, Mr. Walsh did not allow two men from within the region to interview for the position, offering the same explanation to these as he gave to Plaintiff.

The second incident of alleged discrimination involved Plaintiff's 2009 application for the position of National Account Manager (NAM). Two NAM positions were open at the time–one in California and one in the Central region, covering Michigan–but Plaintiff chose to interview only for the Central position because she did not wish to relocate. Plaintiff ultimately did not get the NAM position, and she testified to her belief that she failed to get the position because Mr. Walsh refused to support her due to her age and gender. *Naboychik Depo.*, 146. John Temperato, a member of the decision-making team, provided an alternative explanation: He testified that Plaintiff did not get the NAM position because she did not receive support from other NAMs, and one NAM provided negative feedback regarding Plaintiff. *Temperato Depo.*, 23-24. In addition, Mr. Temperato stated that Plaintiff performed poorly at her interview, "trying to bluff her way through" questions. *Id.* at 28-29. Mr. Temperato also clarified that he did not expect support from Mr. Walsh or Plaintiff's immediate supervisor Mr. Perry; his decision was based largely on the input and advocacy of other NAMs. *Id.* at 17, 25-28.

Each of the open NAM positions was ultimately filled by a highly qualified woman.

The NAM position for which Plaintiff interviewed was filled by a woman over the age of forty with a doctorate in pharmacy.

In support of her age and gender discrimination claims, Plaintiff testified to the following conversation she had with Mr. Walsh during an automobile ride:

> Well, I can tell you that when I did a ride-along with Brendan on a particular work contact, I was in the car and we were talking about compliance, and that's another term that you hear a lot in the pharmaceutical industry, and what I'm referring to is compliance about patients being able to take their medication on a consistent basis so that they can remain healthy. We were on that topic, and he looked at me and he said in a kind of an inflammatory way, Well, you know that if it's going to be a 40-or-some-odd-year woman, she's sure as heck going to take her medication, she'll be very anal about not doing, it, and I was shocked, and I looked at him like, how can you say that when I'm in my forties and a woman, and then he went Uh, uh, and I changed the subject immediately. *Naboychik Depo.*119-20.

Plaintiff further testified that it was the manner in which Mr. Walsh made the statement that concerned her. She believed Mr. Walsh's tone was negative, inflammatory, and demonstrated a disrespect for women. *Id.* at 128-29. She acknowledged, though, that Mr. Walsh never made any direct comment to her about her age or gender adversely affecting her employment. *Id.* at 131.

The gist of Plaintiff's Complaint is that Mr. Walsh's above statement, combined with his failure to allow her to interview in 2008 for the RSM position and his failure to advocate on her behalf in 2009 in her application for the NAM position, is evidence of wrongful age and gender discrimination at Salix.

### B. The Magistrate's Findings

The Magistrate issued an R&R containing his findings on August 8, 2011. The Magistrate found that neither the 2008 RSM hiring decision nor the 2009 NAM hiring

4

decision was motivated by improper considerations of gender or age. As to the RSM decision, the Magistrate found that Plaintiff failed to make out a prima facie showing of discrimination under the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) because there was no evidence that Plaintiff was treated differently from similarly situated individuals outside the protected class. As to the NAM decision, the Magistrate found that it was a close question whether Plaintiff made out a prima facie case, but that he would "generously assume" she had done so. The Magistrate further found that Salix had legitimate non-discriminatory reasons for its decisions not to promote Plaintiff, and that these reasons were not merely pretextual. As to the 2008 position, it was critically important to Mr. Walsh that the successful candidate come from outside the region. As to the 2009 NAM positions, the candidates were simply much more qualified than Plaintiff in the areas that Mr. Temperato deemed critical. Lastly, regarding pretext, the Magistrate found that the "stray, ambiguous remark made by Mr. Walsh, but not in the context of any employment decision" (R&R at 12) was insufficient to establish pretext. Additionally, Mr. Walsh's alleged failure to support Plaintiff for the NAM position did not establish pretext because he was not part of the hiring committee for that position and was under no obligation or expectation to support a candidate applying for a NAM position.

For these reasons, Magistrate Whalen recommended that summary judgment be granted in favor of Defendant on both remaining claims.

### C. Plaintiff's Objections

Plaintiff's objections rely on previously uncited case law and include an entirely new theory of the case, one that was neither briefed by the parties nor considered by

5

Magistrate Whalen. Plaintiff argues that: (1) the 1998 Sixth Circuit case *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998), which the Magistrate failed to consider, controls the question of whether Mr. Walsh's statement to Plaintiff that older women are anal about taking their medication gives rise to an inference of discrimination; and (2) that under *Ercegovich* Mr. Walsh's statement and actions are evidence of a "cumulative managerial attitude" at Salix against older women. Plaintiff also objects to the Magistrate's statement of fact that "[Mr. Walsh] likewise did not allow two other TM's–Chris Wild and Eric Howell, both males–to apply for Ms. Pyle's position, for the same reason" (R&R at 2). Plaintiff asserts that Eric Howell was indeed allowed to interview for the 1998 RSM position, and that the different treatment between Mr. Howell and Plaintiff gives rise to an inference of discrimination.

Plaintiff also submitted supplemental authority, *Staub v. Proctor Hospital*, 562 U.S. ___, 131 S.Ct. 1186 (March 1, 2011), asserting that it addresses whether the actions of Mr. Walsh in the NAM selection process "can result in a finding of discrimination against Salix despite the fact that Mr. Temporato was the ultimate decision maker for that position."

Plaintiff's objections and supplemental authority are considered in full in Part IV, below.

### III. STANDARD OF REVIEW

Where a dispositive pretrial matter has been referred to a magistrate judge for an R&R, the district judge reviews de novo any portion of the magistrate judge's R&R to which the parties specifically objected. FED. R. CIV. P. 72(b). If the court accepts the

R&R, it is not required to specify the reasons why it rejects a party's objections. *U.S. v. Tyson*, 265 F. Supp. 2d 788 (E.D. Mich. 2003). Rather, it is sufficient for the Court to say that it engaged in de novo review of the record and adopts the R&R. *U.S. v. Robinson*, 366 F. Supp. 2d 498 (E.D. Mich 2005).

IV.   **ANALYSIS**

   **A.  The Magistrate's Statement of Facts Correctly Construes the Record**

Plaintiff takes issue with the Magistrate's statement in the facts section of the R&R that "[Walsh] likewise did not allow two other TM's–Chris Wild and Eric Howell, both males–to apply for Ms. Pyles position, for the same reason" (R&R at 2). The statement refers to Mr. Walsh's decision not to allow employees from within the region to pursue the 2008 RSM position because of his belief that it would be difficult for an individual to exercise leadership authority over a group of people with whom he or she had formerly been a peer. The Magistrate's finding is based on Mr. Walsh's sworn testimony, excerpted in part here:

> A. I recommended to Pam at the time that she should not pursue an interview, based on a few different factors.
>
> Q. What were those factors?
>
> A. Well, the first one was–would apply to Pam as well as two other individuals from the region who had applied. And that was just the hesitancy on my part to promote somebody within a region to the leader of that region just because it would make it, in my group, difficult to effectively lead a group of individuals with whom you had been a peer for a period of time. And that was consistent feedback that I had given to Eric Howe and Chris Wilde, who are two other individuals who had applied for that position. *Walsh Depo.*, 13.
>
> [...]

>Q. You indicated that you had hesitancy to promote within your region. Do you know when–well, first of all, you indicated that Eric Howe and Chris Wilde and Pam were all internally in your department and in your district, is that correct?
>
>A. Yes.
>
>Q. So all three of them, you have indicated that you did not feel that they should be promoted within your district, is that correct?
>
>A. Correct.  *Id.* at 20.

The above testimony supports the Magistrate's conclusion that Eric Howell and Chris Wilde, like Plaintiff, were not considered for the 2008 RSM position because they were internal candidates from the same region.

In her Objections, Walsh now claims that Howell was allowed to interview for the RSM position. *Pl.'s Obj.* at 5. She argues that the Magistrate ignored the Affidavit of Eric Howell, in which Plaintiff claims Howell attests "that he was allowed to interview for the RSM position." *Id.* Nowhere in the Affidavit, attached as Exhibit Two to Plaintiff's Response to the Amended Motion for Summary Judgment, does Howell state that he was allowed to interview for the position. He merely states that Mr. Walsh contacted him after he submitted a resume and stated that, though he was welcome to continue his candidacy, he would be unlikely to get the position. *Howell Aff.* at 1. It is a stretch to construe Mr. Walsh's statement allowing Mr. Howell to continue his candidacy as Plaintiff does to mean that he was allowed to interview, especially in light of Mr. Walsh's further statement that Mr. Howell was unlikely to get the job. More likely, Mr. Walsh's invitation to continue was a mere nicety that, when coupled with his warning that Mr. Howell was unlikely to get the job, was meant to deter Mr. Howell from continuing with the application process. However, drawing all reasonable inferences in favor of Plaintiff

and assuming Mr. Howell would have been allowed to interview for the RSM position if he chose to do so, the facts still indicate that there is no basis for Plaintiff to claim she was treated differently. It is indisputable that Mr. Howell did not get the RSM position, did not interview for the position, and voluntarily withdrew from contention.

Assuming again for the sake of argument that Plaintiff was treated differently from Mr. Howell in the 2008 RSM selection process, the Magistrate correctly noted on page 11 of the R&R that Defendant still would prevail on this claim as a matter of law because it had a legitimate non-discriminatory and non-pretextual basis for its decision not to hire Plaintiff. Mr. Walsh insisted that the successful candidate for the RSM position needed to come from outside the region. This factor was critically important to the hiring decision. Ultimately, the three candidates from within the region, including two men, were rejected in favor of an ex-Marine from Atlanta with an impressive resume.

Plaintiff's objection that the Magistrate misconstrued the facts is overruled.

**B. The Case *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998) Does Not Change the Magistrate's Findings that Walsh's Remark Does Not Give Rise to an Inference of Discrimination**

Plaintiff objected to the R&R on the grounds that the Magistrate failed to consider a controlling case, *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998), even though Plaintiff did not cite the case in its opposition to Defendant's Amended Motion for Summary Judgment. Notwithstanding the impropriety of injecting a new argument that was neither briefed by the parties nor considered by the Magistrate

into the case at this stage, the Court finds that *Ercegovich* does not affect the Magistrate's conclusion that Walsh's stray remark does not give rise to an inference of discrimination.

Quoting extensively from the *Ercegovich* opinion but offering sparse analysis on its application to the facts of this case, the Court gleans that Plaintiff rests her argument on the following section of the opinion:

> This court later explained, however, that the McDonald rule was never intended to apply formalistically, and that remarks by those who did not independently have the authority or did not directly exercise their authority to fire the plaintiff, but who nevertheless played a meaningful role in the decision to terminate the plaintiff, were relevant. 154 F.3d at 354-355.

From this passage, Plaintiff argues that since Mr. Walsh was the decision-maker in the 2008 RSM selection process, his remarks regarding older women as "anal" in taking their medication, are automatically relevant to that decision. Plaintiff also argues that *Ercegovich* dictates that Mr. Walsh's remarks are also relevant to the 2009 NAM decision despite the fact that he played no role in the hiring process for that position. The Court disagrees with both of these assertions.

Although *Ercegovich* holds that remarks of non-decisionmakers may be relevant under certain circumstances in the employment discrimination context, the remarks must first satisfy a two-part test. In evaluating the probative value of an allegedly discriminatory statement in the context of an employment decision, the Court first looks to: (1) the identity of the speaker, and then (2) the substance of the statement. *Ercegovich*, 154 F.3d at 354-55. Regarding the first prong, the court stated: "An isolated discriminatory remark made by one with no managerial authority over the challenged personnel decisions is not considered indicative of . . . discrimination." *Id.* at 354, *citing*

*McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1161 (6th Cir. 1990). Regarding the second prong, the court stated that "isolated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of. . . discrimination." *Id.* at 355, *quoting Phelps v. Yale Sec. Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993). That said, there need not be a direct nexus between the remarks and the employment action for the remarks to be relevant, though a direct nexus increases the remarks' probative value. *Id.*

In *Ercegovich*, several individuals occupying high positions within Goodyear made numerous age-biased statements. Notably, the vice president overseeing the entire division stated at a staff meeting, "This company is being run by white haired old men waiting to retire, and this has to change." 154 F.3d at 354. The Sixth Circuit held that the remark was relevant to alleged employment discrimination, even though the vice-president was not the decision-maker in employment matters, because he was the manager over the decision-makers and "was in a position to shape the attitudes, policies, and decisions of the division's managers..." *Id.* at 355. The court concluded: "When a major company executive speaks, 'everybody listens' in the corporate hierarchy." *Id.* Thus, because the speaker held a high and authoritative position within the company, the first prong of the two-part test was satisfied.

The *Ercegovich* court also found that the substance of the vice president's remarks was particularly probative on the issue of employment discrimination. In addition to the "white haired old men" comment, quoted above, the vice president also told his personnel manager "that he did not want any employee over 50 years on his staff." 154 F.3d at 354. Explaining the high probative value of the remarks, the court

11

said: "[N]either of [the vice president's] alleged remarks . . . can be fairly characterized as 'ambiguous' or 'abstract.'  Both remarks on their face strongly suggest that the speaker harbors a bias against older works."

Applying the two-part *Ercegovich* test urged upon this Court by Plaintiff, both of the remaining claims fail to survive summary judgment.  Plaintiff, in her objections, only applied the first, "identity of the speaker" prong and concluded that since Mr. Walsh was the decision-maker for the 2008 RSM position, his comment regarding older women was automatically relevant.  Plaintiff ignored the second, "substance" prong entirely.  The Court agrees with the Magistrate that Mr. Walsh's remark lacks the substance to establish an inference of discrimination.  As the Magistrate correctly noted, Walsh's comment regarding older women being "anal" with regard to taking medication is ambiguous at best (R&R at 9).  Unlike the remarks in *Ercegovich*, Mr. Walsh's remark does not on its face suggest bias.  In fact, Plaintiff herself admitted that the comment could be construed as positive.  *Naboychik Depo*. at 129-130.  The remark is abstract, ambiguous, and unrelated to employment.  It cannot support an inference of discrimination.

The 2009 NAM discrimination claim also fails the *Ercegovich* test because Plaintiff can satisfy neither the "identity" prong nor the "substance" prong.  As an Area Sales Director, Mr. Walsh had no role whatsoever in the selection of the new NAM.  He was under no obligation to advocate on behalf of Plaintiff in the NAM selection process; nor was he in a position of power over the personnel committee, like the vice president in *Ercegovich*.  The Magistrate properly characterized Plaintiff's failure to advocate argument as a "red herring."  Mr. Temperato sought input from other NAMs in the hiring

process; he did not seek input from Area Sales Director, Mr. Walsh. "An isolated discriminatory remark made by one with no managerial authority over the challenged personnel decisions is not considered indicative of age discrimination." *Ercegovich*, 154 F.3d at 354. Even assuming that Mr. Walsh was in a position to influence the NAM selection process, his remark still fails the "substance" prong of the *Ercegovich* test for the reasons stated in the previous paragraph.

Summary judgment is granted in favor of Defendant on both remaining claims.

### C. Mr. Walsh's Remark and Actions Do Not Amount to a "Cumulative Managerial Attitude" Against Older Women

Plaintiff relies again on *Ercegovich* to make the new argument that there was a cumulative managerial attitude of discrimination at Salix that infected the decision-making process and resulted in Plaintiff's failure to be promoted. Plaintiff objects to the R&R on the grounds that it failed to consider this argument, despite the fact that Plaintiff did not raise the argument in her summary judgment brief. Because the facts here are easily distinguishable from those in *Ercegovich*, and because Mr. Walsh was a lone actor whose allegedly discriminatory remark was ambiguous and attenuated from any employment decision, the Court finds that Plaintiff's objection is without merit.

The *Ercegovich* Court held that discriminatory statements may reflect a cumulative managerial attitude that influenced the decision-making process of an employer. Thus, "evidence of a corporate state of mind or discriminatory atmosphere is not rendered irrelevant by its failure to coincide precisely with the particular actors or time frame involved in the specific events that generated a claim of discriminatory

13

treatment." *Ercegovich*, 154 F.3d at 356, *quoting Conway v. Electro Switch Corp.*, 825 F.2d 593, 597 (1st Cir. 1987). The Court cautioned, though, that an "offhand comment by a low-level supervisor" is less likely to be evidence of a cumulative managerial attitude than "a remark by a senior official evidencing managerial policy." *Id.* The Court also stated that it did "not mean to imply that any ageist comment by a corporate executive is relevant as evidence of a discriminatory corporate culture." *Id.* at 357. Rather, in assessing a statement's probative value, the court must look at four factors: (1) the speaker's position in the corporate hierarchy; (2) the purpose and content of the statement; (3) the temporal connection between the statement and the challenged employment action; and (4) whether the statement buttresses other evidence of pretext. *Id.*

In holding that the comments of two non-decisionmakers at defendant-employer constituted relevant circumstantial evidence of a discriminatory atmosphere, the *Ercegovich* Court noted that the individuals occupied senior positions, and that their alleged discriminatory statements occurred in the context of meetings attended by individuals in higher management. The Court also noted that the ageist hostility "may stem from the top" since the vice president and head of the division made two unambiguous discriminatory remarks. *See* pp. 11-12, *supra*.

Plaintiff argues that Mr. Walsh's remark regarding older women, combined with his disparate treatment of Plaintiff in the RSM application process, constitutes relevant evidence of a discriminatory atmosphere. However, the Magistrate found, and this Court agrees, that Plaintiff was not treated differently than other applicants for the RSM position in 2008. *See* pp. 8-9, *supra*; R&R at 10. It is unclear then how Mr. Walsh's

lone comment regarding older women is evidence of a discriminatory managerial attitude. The facts here are simply distinguishable from those in *Ercegovich*. *Ercegovich* involved at least three speakers, one of whom was vice president, who made numerous unambiguous statements evincing a policy of age discrimination. Here, Plaintiff's case rests on an ambiguous statement of one mid-level manager made outside the context of an employment decision. Plaintiff never explains why Mr. Walsh's alleged discriminatory attitude should be imputed to other managers at Salix. Of the four factors stated above, all but the "temporal connection" prong sway strongly against a finding of a discriminatory managerial atmosphere. Therefore, Plaintiff has not met her burden to establish a discriminatory atmosphere at Salix.

### D. Plaintiff's Supplemental Legal Authority Does Not Alter the Magistrate's Analysis

Plaintiff submitted supplemental legal authority on whether Mr. Walsh's actions in the 2009 NAM selection process can result in a finding of discrimination against Defendant despite the fact that Mr. Temperato was the ultimate decision-maker for that position. The Court reviewed the supplemental authority, *Staub v. Proctor Hospital*, 562 U.S. ___, 131 S. Ct. 1186 (March 1, 2011), and concludes that it does not affect the Magistrate's analysis.

In *Staub*, the Supreme Court set forth a three-part test for determining when an employer may be liable when an employment decision is made with no unlawful animus on the part of the decision-maker, but partly on the basis of earlier discriminatory conduct of a supervisor. For an employer to be liable, the supervisor must: (1) perform

an act motivated by discriminatory animus; (2) which is *intended* to cause an adverse employment action; and (3) the act is a proximate cause of the ultimate employment action. *Staub*, 131 S.Ct. at 1194.

For Defendant to be liable, Plaintiff must show that Mr. Walsh's alleged failure to advocate on her behalf during the 2009 NAM selection process satisfies each of the three elements above. Plaintiff fails to meet her burden.

First, there is no evidence in the record that Mr. Walsh's failure to advocate was motivated by discriminatory animus. His remark regarding older women being anal about medication is too ambiguous and attenuated to support an inference of discrimination. Further, as an Area Sales Director, he was under no expectation or obligation to advocate on Plaintiff's behalf; Mr. Temperato based his decision largely on the input of other NAMs. Mr. Walsh's inaction does not give rise to an inference of discrimination. Second, there is no evidence that Mr. Walsh intended to cause an adverse employment action. As Defendant points out, the only evidence in the record is that Mr. Walsh helped Plaintiff by arranging to have her NAM interview postponed so that she would have more time to prepare. *See Walsh Depo.* at 27. Third, there is no evidence that Mr. Walsh's inaction was the proximate cause of Mr. Temperato's decision not to offer the NAM position to Plaintiff. Mr. Temperato sought input from other NAMs and based his decision on that input. None of the NAMs provided positive input, and one provided negative input. Mr. Temperato did not expect Mr. Walsh's input. The Magistrate properly characterized Plaintiff's failure to advocate argument as a red herring.

For these reasons, Plaintiff's supplemental authority does not change the Magistrate's analysis.

## V. CONCLUSION

The Court **ADOPTS** Magistrate Whalen's R&R in full.  Judgment will enter for Defendant.

**IT IS ORDERED.**

S/Victoria A. Roberts<br>Victoria A. Roberts<br>United States District Judge

Dated:  September 27, 2011

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 27, 2011.

s/Carol A. Pinegar
Deputy Clerk

---